United States District Court
Southern District of Texas
**ENTERED**
August 08, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARBARA LEWIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-3749 |
| | § | |
| TRANSCANADA USA SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

### ORDER

The Court has before it the motion for summary judgment filed by Defendant TransCanada USA Services, Inc. ("Defendant" or "TC USA"). (Doc. No. 19). Plaintiff Barbara Lewis ("Plaintiff" or "Lewis") filed a response in opposition (Doc. No. 20), and Defendant filed a reply thereto. (Doc. No. 22). After reviewing the briefing and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.

### I. Background

This is an employment discrimination and retaliation case. Defendant TC USA is a subsidiary of TC Energy, an energy company headquartered in Calgary, Canada, that is primarily engaged in providing and maintaining natural gas and crude oil pipelines. (Doc. No. 19 at ¶ 1). In the fall of 2016, Plaintiff learned of an opening for a Risk Analyst position in TC USA's Houston office. (*Id.* at ¶ 3). To find out more about the position, she allegedly called Darnell Jones

("Jones"), a Houston employee who requested her resume so that he could send it to Johan Bramer ("Bramer"), his manager based out of the Calgary office.[1] (*Id.* at ¶ 3).

Bramer and Jones subsequently interviewed Plaintiff for the position. (*Id.* at ¶ 4). Following the interview, Jones and Bramer agreed that Plaintiff was likely a good fit for the position and offered her the role. (*Id.*) As part of the formal offer, they enclosed documents such as TC USA's Harassment Free Workplace Policy and Code of Business Ethics. (*Id.*). Plaintiff received the materials and accepted the position. (*Id.*)

Plaintiff began working for Defendant as a Risk Analyst in November 2016. She was hired to replace an individual who was scheduled to move locations. (Doc. No. 16 at ¶¶ 7–8). Plaintiff claims she was also hired to serve as the eventual replacement for Jones, the sole risk analyst in the Houston office. (*Id.* at ¶¶ 9–10). Plaintiff contends that Jones was scheduled to retire in two years and that he was supposed to help Plaintiff to "learn the company, people, and processes" before she moved into his role. (*Id.*). Initially, though, Plaintiff reported to Bramer. (*Id.* at ¶ 11).

The parties dispute many of the events following Plaintiff's hiring. According to Defendant, Plaintiff and Jones worked well together for the first year or so. (Doc. No. 19 at ¶ 5). In February 2018, Bramer assigned Plaintiff to report directly to Jones, and the following month, Plaintiff received a raise. (*Id.*). Following the reassignment, Defendant contends that Jones and Plaintiff began to "clash" in the workplace, resulting in Jones speaking with James Brown ("Brown"), a Human Resources ("HR") representative, for guidance on how to effectively move forward. (*Id.* at ¶ 6). Plaintiff contends, however, that starting in November 2017 (before the reassignment), Jones "started undermining Ms. Lewis by sending an email to TransCanada's

---

[1] At the time of Bramer's declaration, he was employed by TransCanada PipeLines Limited, a subsidiary of TC Energy. From the record, it is unclear whether he ever actually worked for TC USA as opposed to TC Energy or other subsidiaries. *See* (Doc. No. 19, Ex. 1 at 74).

2

insurance broker team to immediately stop copying Ms. Lewis on any email that was addressed to him," and that after the reassignment, Jones's "bullying and abuse of power" created a stressful and hostile work environment (Doc. No. 20 at 8).

Defendant notes that on July 3, 2018, Plaintiff e-mailed Bramer inquiring about Jones's retirement date. (Doc. No. 19 at ¶ 6). Shortly thereafter, Jones gave Plaintiff her "mid-year review," in which he stated she "achieves standards" while identifying a host of areas where her performance could be improved, including by focusing on fulfilling the areas over which she was responsible instead of exclusively focusing on observing him (*Id.* at ¶ 7). Defendant claims that Plaintiff responded "angrily" to her review, accusing Jones of having an "attitude against her" and for using his authority to bully and undermine her. (*Id.*). Plaintiff, however, argues that when she felt undermined, she asked Jones if they could meet to discuss her work environment, and that instead of meeting with Plaintiff, Jones merely sent notice of her mid-year review. (Doc. No. 20 at 8).

Defendant next explains that on three separate occasions in July 2018, Jones sought Brown's advice on how to handle Plaintiff's reaction to her mid-year review, as well as a previous event in which Plaintiff allegedly changed one of Jones's passwords without his permission. (Doc. No. 19 at ¶ 8). Plaintiff disputes the password incident and further claims that she did not see her mid-year review until September 20, 2018. (Doc. No. 20 at 9). On this date, Defendant argues that Plaintiff informed Jones that she had reviewed her evaluation, that she was unhappy with it, and wished to appeal. (Doc. No. 19 at ¶ 8). Jones defended the evaluation and explained he was not sure if one could appeal, but that Plaintiff should speak with HR. (*Id.*). Plaintiff contends that it was not until Jones asked her to update her goals in her personnel portal that she saw her review,

3

and that she was not angry, but confused because the written evaluation did not correspond with the oral review in July. (Doc. No. 20 at 9).

Defendant claims that on September 25, 2018, Plaintiff relayed her concerns about Jones's alleged bullying to Brown, but that that she did not bring up any claim of discrimination on the basis of race or sex. (Doc. No. 19 at ¶ 9). Three days later, Brown discussed these issues with Jones. (*Id.*). Plaintiff, on the other hand, claims that because Brown was being transferred to another unit, her complaint was transferred to Katie Maloney ("Maloney"), a different HR representative. (Doc. No. 20 at 10). After hearing Plaintiff's concerns, including Plaintiff's suggestion that "Jones expected her to be submissive to him because she is a woman," Maloney suggested that Jones and Lewis meet with a trained facilitator to address the issues. (*Id.*). No facilitation occurred at this time and the matter was eventually referred back to Brown. (*Id.*).

The following month, Bramer changed the reporting structure so that Jones and Plaintiff reported directly to him, a decision that satisfied both parties. (Doc. No. 19 at ¶ 10). Unfortunately, the reassignment did not resolve the ongoing issues between Plaintiff and Jones, and each party sought further assistance from Bramer and Brown. (*Id.* at ¶ 11). Plaintiff claims that after requesting a facilitation (or mediation), in an attempt to "save her job," she tried to amend her relationship with Jones by inviting him to a Houston Rockets playoff game (which he declined) and to lunch, to which he allegedly responded that he did not have lunch with female co-workers. (Doc. No. 20 at 10–11). A facilitated resolution was eventually held with Brown facilitating. (Doc. No. 19 at ¶ 11). Bramer was also in attendance. (Doc. No. 19, Ex. 1 at 74).

As a result of the facilitation, both Plaintiff and Jones "agreed to be more approachable to one another, give one another the benefit of the doubt about the other's intention, communicate more in person (versus email), and strive to work together to further detail role clarity." (*Id.* at ¶

4

12). At no time during the facilitation did Plaintiff attribute Jones's treatment toward her as being due to her race or sex. (*Id.*). The Court notes that both the Plaintiff and Jones are African American. (Doc. No. 19 at 8).

While Defendant claims that Plaintiff did not raise any additional concerns to anyone following the facilitation, Plaintiff claims that to clear her name of the password accusation, she found an email which showed that she had merely "advised" Jones to update his password so that she could run a report that he requested. (Doc. No. 20 at 11). Allegedly, after sending this email to Jones, he reacted poorly, and Bramer subsequently called Plaintiff. (*Id.*). Plaintiff explained that she sent Jones the email to defend herself, stating that "she had a right to protect herself from [Jones's] false accusations and harassment and that [Jones] had a problem working with her because she is a woman," and that she believed Bramer would have "protected her" if she was a white woman. (*Id.* at 12). Bramer purportedly became upset at this accusation, allegedly responding "this is not working out." (*Id.*)

Defendant contends that during the same timeframe, the volume of insurance claims had fallen below the projected number, and Bramer realized that the Calgary team was being underutilized and thus able to handle most of the claims being handled by the Houston office. (Doc. No. 19 at ¶ 13). As a result, Bramer eliminated the positions held by Jones and Plaintiff in June 2019. (*Id.*). Neither of the positions have been recreated or replaced. (*Id.*). Plaintiff, however, contends that during the facilitation in April, Bramer told the parties that there was plenty of work for the positions, and further notes that the workload was given to two while males in Calgary following the elimination of the Houston positions. (Doc. No. 20 at 12).

5

In November 2020, Plaintiff brought suit against Defendant, alleging Title VII discrimination claims on the basis of sex and race, as well as a Title VII retaliation claim. (Doc. No. 1).

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

6

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Title VII claims "can be established through either direct or circumstantial evidence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Where, as in this case, the plaintiff's case is built upon circumstantial evidence, a court relies upon the *McDonnell Douglas* framework for its analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In *McDonnell Douglas*, the Supreme Court set forth a three-part framework to analyze a Title VII claim. First, the plaintiff must establish a prima facie case of according to the specific requirements of her particular claims, which in this case are discrimination and retaliation. *Id.* If the plaintiff does so, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employer's action." *Id.* If the employer provides a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to prove that the employer's reason was pretext for discrimination or retaliation. *Id.* at 804–05.

### III.    Analysis

Defendant has offered argument for both Plaintiff's Title VII discrimination and Title VII retaliation claims. The Court will address each argument in turn.

A. <u>Title VII Discrimination Claim</u>

First, Plaintiff must establish a prima facie case of discrimination. Under Title VII, a prima facie case of discrimination based on disparate treatment requires a showing that the plaintiff: (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) was treated less favorably because of his or her membership

7

in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015).

Defendant argues that Plaintiff has failed to satisfy the fourth requirement to establish a prima facie case of discrimination. Specifically, Defendant contends that Plaintiff has based her discrimination claim on a single alleged adverse employment action: the elimination of her position. (Doc. No. 19 at 17). Defendant further argues that Plaintiff has failed to identify any "similarly-situated employees who were treated better than her under nearly identical circumstances" and that Plaintiff "has no evidence that any other U.S. Risk Managers did not have their positions eliminated." (*Id.*). Defendant additionally notes that in her deposition, Plaintiff could not identify any other non-African American or male employees who were treated better than her (*Id.*) (citing Doc. No. 19, Ex. 1, p. 31 at 146:23–148:2). Defendant concludes, therefore, that Plaintiff has failed to meet her burden on this point.

In her response, Plaintiff offers no argument on her discrimination claim. *See* (Doc. No. 20). "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." *Keelen v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). As a result, the Court finds that Plaintiff has waived her discrimination claim. Defendant's motion is granted with respect to Plaintiff's Title VII discrimination claims.

B. <u>Title VII Retaliation Claim</u>

Defendant also moves for summary judgment on Plaintiff's retaliation claim. Plaintiff claims that Defendant's termination of her employment constituted retaliation for engaging in "protected activities," namely, opposing Defendant's alleged discrimination and harassment. (Doc. No. 20 at ¶ 16).

8

Under Title VII's "opposition clause," it is unlawful for an employer "to discriminate against any individual . . . because [she] has opposed any practice made an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-3(a). A Title VII plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000)). A plaintiff asserting a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nasser*, 570 U.S. 338, 362 (2013). When a Title VII plaintiff makes a prima facie showing of retaliation, "the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is pretext for the actual retaliatory reason." *Aryain v. Wal-Mart Stores Texas LLP*, 534 F.3d 473, 484 (5th Cir. 2008).

### 1. *Prima Facie Case of Retaliation*

Plaintiff alleges that Defendant's retaliation "was and is due to Plaintiff exercising her rights by opposing" her alleged discrimination on the basis of race and sex. (Doc. No. 6 at ¶ 57).

Defendant argues that Plaintiff did not engage in any lawfully protected conduct, claiming that the only complaints made by Plaintiff during her employment—against Jones in the summer of 2018 and spring of 2019—are "generalized complaints of 'bullying' and 'undermining'" which "fall far short of the standard required to put an employer on notice of alleged oppositional activity." (*Id.* at 21) (citing *Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006)).

9

In response, Plaintiff argues that she made two specific complaints concerning her race and gender. (Doc. No. 20 at ¶ 16). Relying on her declaration, Plaintiff claims she complained to Maloney that Jones expected her to be "submissive to him because [she] was a woman." (Doc. No. 20, Ex. D at ¶ 12). She further claims that she complained to Bramer that she believed if she were a "white women," he would have "protected [her] from Mr. Jones' abuse a long time ago." (*Id.* at ¶ 21).

Defendant, in its reply, notes that Plaintiff does not provide any evidence that she filed a charge of discrimination, and further argues that Plaintiff's comments do not amount to protected activity under Title VII. (Doc. No. 22 at 8–9). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). "[A]n employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief." *Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017, 1025 (S.D. Tex. 1997); *see also Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005).

Though neither the Supreme Court nor the Fifth Circuit[2] have explicitly held whether informal complaints constitute protected activity, "the majority of circuits find that informal complaints can come within the opposition clause's requirements." *Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 664 (W.D. Tex. 2014) (citing a string of cases). Thus, Plaintiff's internal complaint to Bramer qualifies as a protected activity under Title VII. Plaintiff's internal complaint to Maloney

---

[2] "Although not binding on this Court, the Fifth Circuit has stated in an unpublished opinion that an employee need not submit a formal complaint or charge of discrimination to meet the opposition requirement and that an informal complaint to a supervisor is sufficient." *Eure*, 61 F. Supp. 3d at 664, n. 10 (citing *Tureaud v. Grambling State Univ.*, 294 F. App'x. 909, 914–15 (5th Cir. 2008))

similarly constitutes a protected activity because she stated to Bramer unequivocally that Jones expected her to be "submissive" by virtue of her gender. (Doc. No. 20, Ex. D. at ¶ 12). Therefore, Plaintiff has sufficiently evidenced a protected activity.

Nevertheless, Defendant argues that summary judgment should be granted because Plaintiff has failed to produce evidence of causation between the protected activity and the adverse action. (Doc. No. 19 at 22). Defendant summarizes Plaintiff's complaints against Jones as "vague" and "generic," additionally arguing that Plaintiff offers "nothing more than conjecture in support of her allegation that TC USA terminated her employment in retaliation for her complaints about Mr. Jones." (*Id.*). Defendant further claims that there is no evidence that anyone employed by Defendant was upset about Plaintiff's complaints, but instead, they took them seriously by reassigning her to no longer work under Jones and by organizing a facilitated resolution. (*Id.*).

Plaintiff responds by noting that the causal connection can be established by the proximity in time between her complaint to Bramer and her termination.[3] Plaintiff contends that she complained to Bramer in April 2019, and that she was terminated less than two months later in June 2019. (Doc. No. 20 at ¶ 13). In her declaration, Plaintiff noted that when she voiced her concerns to Bramer, he "became very upset and said, 'this is not working out.'" (Doc. No. 20, Ex. D, at ¶ 21). Plaintiff additionally contends that during the April facilitation, Bramer assured her that there was plenty of work for her and Jones because the company was starting the Keystone Pipeline Installation project. (*Id.* at ¶ 22).

The Court concludes that a reasonable person could find that the summary judgment evidence demonstrates more than a mere "temporal connection" between Plaintiff's internal complaint and the termination of her employment. *Aryain*, 534 F.3d at 487. The Court finds that

---

[3] Plaintiff offers no argument suggesting a causal connection between her termination and her complaint to Ms. Maloney.

11

the foregoing evidence, despite being circumstantial, is enough to create a genuine issue of material fact with respect to causation.

### 2. Legitimate, Non-Retaliatory Reason

Because Plaintiff has made a prima facie showing of retaliation, the burden shifts to Defendant to "articulate a legitimate . . . non-retaliatory reason for its employment action." *Aryain*, 534 F.3d at 484. Defendant argues that its decision to eliminate the US-based risk management department, thereby resulting in the elimination of Plaintiff's position, was based on "business circumstances entirely unconnected to her workplace complaints or performance." (Doc. No. 19 at 23). Specifically, in his declaration, Bramer stated that the decision to terminate Plaintiff (and Jones) was based on his recognition that "the volume of insurance claims the company had previously projected had not materialized in reality," and that his Calgary team was being "underutilized" and thus capable of handling the claims being handled by the Houston office. (Doc. No. 19, Ex. 1 at 75).

The Fifth Circuit has held that a reorganization of a department resulting in the elimination of a plaintiff's position is a legitimate, non-discriminatory (and presumably non-retaliatory) reason for termination. *Berquist v. Wash Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir. 2007). As such, Defendant has satisfied its burden on this point.

### 3. Pretext

The final part of the analysis concerns whether Plaintiff can demonstrate (or at this stage, raise a fact issue) that Defendant's legitimate, non-retaliatory reason for her termination was pretext for retaliation. To demonstrate pretext, Plaintiff must show "that the adverse action would not have occurred 'but for' [Defendant's] retaliatory motive." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "In order to avoid summary judgment, [a

plaintiff] must show that there is a 'conflict in substantial evidence' on this ultimate issue." *Musser v. Paul Quinn College*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)) "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Hernandez*, 670 F.3d at 658 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

Plaintiff makes three arguments in support of this point. First, Plaintiff notes the temporal proximity—less than two months—between Plaintiff's complaint to Bramer and her termination. (Doc. No. 20, Ex. D at ¶ 22). Next, Plaintiff argues that Bramer assured her in April that there would be plenty of work for the Houston office because "President Trump . . . started the Keystone Pipeline again." (Doc. No. 20, Ex. A at 141:15–23). Finally, Plaintiff testified that workers' compensation claims were only handled in the United States, that they'd never been handled in Canada, and that it would not make sense for them to be handled in Canada because "[n]obody in Canada knew the [workers' compensation] process [in the United States]." (*Id.* at 143:20–144:12).

"[I]t has long been the law in [the Fifth Circuit] that 'Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus.'" *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997). As such, Plaintiff's workers' compensation argument is unpersuasive. Plaintiff's remaining arguments, however, raise a fact issue as to whether Defendant's proffered legitimate, non-retaliatory reason for her termination was pretextual for retaliatory motives. *Musser*, 944 F.3d at 561. Of course, much of the evidence, such as the meaning of Bramer's alleged "this isn't working out" comment, may be reasonably interpreted as non-retaliatory; nevertheless, this is a question best resolved by the finder of fact.

The Court concludes that Plaintiff has shown a genuine dispute of material fact with respect to her Title VII retaliation claim. Therefore, Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII retaliation claim is denied.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** as to the claims of discrimination and **DENIED** as to the retaliation claim. (Doc. No. 19).

Signed at Houston, Texas, this 8th day of August, 2022.

Andrew S. Hanen
United States District Judge